UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MARK E. WOLTERS, | Case No. 1:10-cv-86 |
| Appellant, | |
| | HONORABLE PAUL L. MALONEY |
| v. | |
| FLAGSTAR BANK FSB, | |
| GREAT LAKES MORTGAGE & INVESTMENT, INC., | |
| EVERHOME MORTGAGE COMPANY, INC., | |
| MORTGAGE ELECTRONIC REGISTRATION | |
| SYSTEMS, INC., and | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Appellees. | |

---

## OPINION and ORDER

**Overruling the Debtor's Appeal of the Bankruptcy Court's Dec. 3, 2009 Ruling:**
Affirming Rejection of Debtor's Objection to an Equitable Claim of Creditor-Mortgagee Flagstar Bank

During the relevant time period, debtor-appellant Mark E. Wolters ("Wolters") and his former wife ("the owners") owned a house and the underlying parcel of real property at 4349 Pillon Road in Muskegon, Michigan ("the residence parcel"), as well as a vacant adjacent parcel which they also used as part of their homestead ("the vacant parcel"). When Wolters and his then-wife sought to refinance their mortgage debt, the legal description on the new mortgage documents was that of the vacant parcel alone, not that of both the residence parcel and vacant parcel. It is undisputed that both the owners and new-mortgage lender Flagstar Bank FSB (creditor-appellee "Flagstar") all believed, intended, and expected that the legal description of the mortgaged property

which was attached to the Mortgage would include both the residence parcel and the vacant parcel. The error in the legal description of the real property remained undiscovered by the owners and lender Flagstar until well after Wolters filed for Chapter 7 bankruptcy in the Western District of Michigan.

In the schedules which Wolters filed in his Chapter 7 bankruptcy case, he listed Flagstar's debt as being fully secured by both the residence parcel and the vacant parcel pursuant to the Mortgage (Appellees' Exhibit 1). After Wolters filed the bankruptcy petition, Flagstar obtained relief from the automatic stay in order to foreclose on the mortgage. Flagstar completed foreclosure of the mortgage with a bid for the full amount of the owners' indebtedness.

> Flagstar recounts the procedural history of the case below as follows:
>
> [t]he Debtor's Chapter 7 case below was filed only in the name of Mark E. Wolters, with his former wife not participating as a joint debtor in the bankruptcy. In fact, during the pendency of the bankruptcy, but more than six months after the Debtor's Chapter 7 bankruptcy had been filed, Mr. and Mrs. Wolters were divorced and Mrs. Wolters, as part of the divorce, conveyed her one-half interest in the Residence Parcel to the Debtor.
>
> Pursuant to 11 U.S.C. § 541(a)(5)(B), because this conveyance occurred more than six months after the filing of the Chapter 7 bankruptcy [petition] the undivided one-half interest in the Residence Parcel conveyed to the Debtor by his ex-wife did not become an asset of the bankruptcy estate.
>
> Given the fact that an undivided one-half interest in the Residence Parcel was not an asset of the estate, the Trustee could not assert his "bona fide purchaser for value without notice claim" as to that interest[,] and as a result the Trustee's Adversary Proceeding resulted in an Order from the Bankruptcy Court determining that [only] the Trustee's interest as to an undivided one-half interest of the Residence Parcel (the Debtor's portion on the date of the filing of the bankruptcy) was senior to any Mortgage claim by Lender.
>
> That ruling voided any claim that Appellees had as a *secured creditor* on the undivided one-half interest in the Residence Parcel based upon the fact that a bona-

> fide Purchaser for value without notice would prevail over an equitable mortgage claimant, but did not in any way affect any claim of equitable mortgage as to the other one-half interest in the Residence Parcel (the interest formerly owned by the Debtor's former spouse and deeded to the Debtor after the date of the filing of the bankruptcy). (*See* Exhibit 2)
>
> The Trustee then proposed a sale of the undivided one-half interest of the Residence Parcel and at the sale the Lender [appellee Flagstar] was the successful bidder with a bid in the amount of $87,000.
>
> [T]he Lender did not previously believe it had a secured claim as to only an undivided one-half interest of the Residence Parcel [but rather to a full interest in the Residence Parcel]. [Moreover,] the Trustee now had funds from which to pay unsecured claims. [Therefore], the Lender filed a Proof of Claim asserting [its] unsecured claim.
>
> The Lender's Proof of Claim was deemed to be a late-filed claim (filed after the claims bar date) and only allowed to be paid after payment of all other claims, including administrative claims, Trustee's fees and other unsecured claims pursuant to 11 U.S.C. § 501(a) and 11 U.S.C. § 726(a)(3). The Trustee has estimated that after the payment of all other claims in the bankruptcy but before the return of any funds to the Debtor (pursuant to 11 U.S.C. § 726(a)(6)), there will remain approximately $15,000 to $20,000 from the proceeds of the sale of the Estate's interest in the Residence Parcel.
>
> The Trustee then sought to close the estate and make payment of the claims. **The Debtor then filed an objection to the Lender [Flagstar]'s claim, asserting that, because at the foreclosure sale . . . the Lender bid the amount of $204,434.39 (the full amount of the mortagge debt owed to it at the time), the Lender was not entitled to file Proof of Claim.** The Debtor asserted that, based upon the bid at the foreclosure sale, the entire indebtedness had been extinguished and paid[,] leaving no debt to support a claim.

Appellee Flagstar's Brief at 3-5 (some paragraph breaks added, italics in original, boldface added).

Mortgagee Flagstar criticizes debtor Wolters' objection to the claim as follows:

> The assertion [that Flagstar could not file a claim because it had bid at foreclosure sale the full amount of the mortgage owed it] was made even though the Debtor acknowledges that the foreclosure sale and Lender's bid at the foreclosure sale were the result of a mutual mistake of fact whereby both the Debtor (Appellant) and the Lender (one of the Appellees) believed that the foreclosure sale was the sale of both the Residence Parcel and the Vacant Parcel. The Debtor now seeks to use this mutual mistake of fact as a sword to have returned to him $15,000 to $20,000 in

proceeds paid to the Trustee for the purchase of the estate's one-half interest in the Residence Parcel instead of having it paid to Lender [Flagstar] to partially pay an indebtedness that the Debtor readily admits that he incurred.

Appellee Flagstar's Brief at 5. Flagstar accurately states the relevant issue before the bankruptcy judge, and recounts the crux of the judge's oral ruling as follows:

> The only issue before the [Bankruptcy] Court at the December 3, 2009 hearing was the Debtor's objection to the claim filed by the Lender and whether the $15,000 to $20,000 that is estimated to remain in the bankruptcy estate after payment of all other creditors and administrative expenses is paid to the Lender pursuant to 11 U.S.C. § 726(a)(3) or returned to the Debtor pursuant to 11 U.S.C. § 726(a)(6).
>
> At the hearing . . . the Bankruptcy Court indicated that . . . it had . . . authority over the surplus or the proceeds that are available for distribution and was not ruling on other issues. *See*: Transcript, Page 22. The Bankruptcy Court in ruling on the [debtor's] objection to the [claim] stated as follows:
>
>> THE COURT: Alright. I'm going to overrule the objection to the claim. And the reason I'm going to overrule the objection to the claim is that we could have had an adversary proceeding to determine, you know, there was a mistake, a mutual mistake effect [sic, should be "of fact"], but there isn'[t any factual controversy. There was a mutual mistake [of fact]. And it seems to me that the foreclosure sale bid, which it really got rid of the deficiency, was premised on both parties' mistake of what was going on.
>>
>> It also seems inequitable to me that the – because of that mistake, that the Debtor would be able to get the surplus, in effect, the surplus from the bankruptcy estate, which is largely the product of the sale of this real estate as a consequence of the avoidance and preservation under 544 and 550 and perhaps 551, I guess, for the preservation of the lien. And it just would be, in my opinion, inequitable and not really factually supported.
>>
>> And so those are the reasons that I'm going to overrule your objection to the claim. The claim will be allowed as an untimely claim and paid in accordance with [11 U.S.C. §] 726[1],

---

[1] Title 11 U.S.C. § 726 is entitled Distribution of Property of the Estate and provides, in part:

unless there is an appeal.

> Transcript at Pages 19-20. The Court went on to state at a later point:
>
>> But the point, my point is, is the deficiency that they – in essence, the mutual mistake deprived them of the ability to assert the deficiency. And the facts they would need to show, seems to me, to establish that there is a mutual mistake.
>
> Transcript at Page 21. As a result of the foregoing factual findings, the Bankruptcy Court ruled . . . that . . . it would be inequitable for the Court to deny the claim based upon the Debtor's argument that the mutual mistake resulting in the bid at the foreclosure sale somehow extinguished the debt.

---

(a) Except as provided in § 510 of this title [governing subordination agreements], property of the estate shall be distributed –

  (1) first, in payment of the kind of claims specified in, and in the order specified in, § 507 of this title, proof of which is timely filed under § 501 of this title or tardily filed on or before the earlier of –
    (A) the date that is ten days after the mailing to creditors of the summary of the trustee's final report;
    (B) the date on which the trustee commences final distribution under this section;

  (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in ¶ (1), (3), or (4) of this subsection, proof of which is –
    (A) timely filed under § 501(a) of this title;
    (B) timely filed under § 501(b) of this title; or
    (C) tardily filed under § 501(c) of this title ,if –
      (I) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of proof of such claim under § 501(a) . . . and (ii) proof of such claim is filed in time to permit payment of such claim;

  (3) third, in payment of any allowed claim of the kind specified in ¶ (2)(C) of this subsection;
  (4) fourth, in payment of any allowed claim , whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such . . . are not compensation for actual pecuniary loss suffered by the holder of such claim;
  (5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under ¶ (1), (2), (3), or (4) of this subsection; and
  (6) sixth, to the debtor.

11 U.S.C. § 726(a) (words "paragraph" and "section" replaced with symbols throughout).

Appellee Flagstar's Brief at 5-6.

Again, Creditor Flagstar alleges that at the time of the foreclosure sale, both the owners and Flagstar still believed that the legal description of the mortgage property which was attached to the mortgage covered both the residence parcel and the vacant parcel. Debtor Wolters does not contest this allegation, so the court treats it as true. *See Mack v. State Farm Mut. Auto. Ins. Co.*, No. 99-2315, 210 F.3d 375, 2000 WL 52888, *5 (7th Cir. Jan. 21, 2000) ("State Farm stated that it believed that Reeves was the best candidate for the job. Mack did not dispute or object to this statement, and accordingly admitted it as true."), *cert. denied*, 531 U.S. 880 (2000); *Zynger v. Dep't of Homeland Security*, 65 F. Supp.2d 50, 59 (E.D.N.Y. 2009) ("Accordingly, because the plaintiff has not contested any of these facts, they will be taken as true for purposes of the summary judgment [sic]."), *aff'd*, – F. App'x –, 2010 WL 1170348 (2d Cir. Mar. 25, 2010).

As noted above, the court accepts creditor Flagstar's uncontested allegation that the omission of the residence parcel (from the description of the mortgaged property attached to the mortgage) constituted a "mutual mistake" of fact as the Michigan Supreme Court defines the term. In *Ford Motor Co. v. City of Woodhaven*, 475 Mich. 425, 716 N.W.2d 247 (Mich. 2006), the Michigan Supreme Court stated:

> "Mistake" is defined as
>
>> 1. An error, misconception, or misunderstanding; an erroneous belief. 2. *Contracts*. The situation in which the parties to a contract did not mean the same thing – or when one or both, while meaning the same thing, formed untrue conclusions about the subject matter of the contract – as a result of which the contract may be rendered void.
>
> Moreover, "mutual mistake" is defined as
>
>> 1. A mistake in which each party misunderstands the other's intent

> – Also termed bilateral mistake. 2. A mistake that is shared and
> relied on by both parties to a contract. A court will often revise or
> nullify a contract based on a mutual mistake about a material term.
> – Also term (in sense 2) common mistake.
>
> Further, "mistake of fact" is defined as "[a] mistake about a fact that is material to
> a transaction."

*City of Woodhaven*, 475 Mich. at 440, 716 N.W.2d at 255 (italics and citations omitted). Creditor Flagstar further alleges, without contradiction by debtor Wolters, that these parties did not become aware of the mutual mistake "at least until some time during the redemption period . . . .", Appellee Flagstar's Brief at 2.

Once the bankruptcy trustee discovered that the Flagstar-Wolters mortgage erroneously omitted the residence parcel, the trustee brought an adversary proceeding asking the bankruptcy court to declare that, because 11 U.S.C. § 544(a)(3) gives the Trustee the rights of "a *bona fide* purchaser for value, without knowledge", the bankruptcy estate's interest in the debtor's residence parcel was senior to any mortgage or equitable mortgage claim which mortgagee/creditor Flagstar might have.

**STANDARD OF REVIEW**

This court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact only for clear error, *In re Wingerter*, 594 F.3d 931, 935-36 (6th Cir. 2010) (citing *Behlke v. Eisen*, 358 F.3d 429, 433 (6th Cir. 2004)). *See* FED. R. BANKR. P. 8013 ("On an appeal, the District Court or a Bankruptcy Appellate Panel may affirm, modify or reverse a Bankruptcy Judge's Judgment, Order or Decree or remand with instructions for further proceedings. The Findings of Fact, whether based on oral or documentary evidence, shall not be set aside unless clearly

erroneous[,] and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.").

It is the appellant's burden to show that a factual finding was clearly erroneous, *In re Oakes*, No. 92-3935, 7 F.3d 234, 1993 WL 339725, *1 (6th Cir. Sept. 3, 1993) (per curiam) (Kennedy, Siler, Contie) (citing *In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (9th Cir. BAP 1989)). If the appellant fails to carry this burden, the bankruptcy court's factual findings will stand. *See In re Shanker*, No. 05-8085, 347 B.R. 115, 2006 WL 1520082, *7 (6th Cir. BAP June 5, 2006) (C.J. Aug, Gregg, Latta) (citing *Abrams v. Sea Palms Assocs., Ltd.*, 229 B.R. 784, 788-89 (9th Cir. BAP 1999)).

"A factual determination is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Long*, No. 07-8022, 385 B.R. 799, 2008 WL 552495, *1 (6th Cir. BAP Feb. 29, 2008) (Parsons, Scott, Shea-Stonum) (quoting *Bailey v. Bailey*, 254 B.R. 901, 903 (6th Cir. BAP 2000)); *see also US v. Goff*, 187 F. App'x 486, 489 (6th Cir. 2006) (Richard Allen Griffin, J.) (citing *US v. Monumental Life Ins. Co.*, 440 F.3d 729, 732 (6th Cir. 2006)). As Judge McKeague has noted, showing clear error under this standard is an "especially onerous" task, *see In re Campbell*, 1994 WL 924299, *4 (W.D. Mich. Sept. 28, 1994) (citing *In re Burgess*, 955 F.2d 134, 136-37 (1st Cir. 1992)), because there is no clear error where the factfinder merely chose between "two permissible views of the evidence." *Elder v. Berghuis*, 644 F. Supp.2d 888, 896 (W.D. Mich. 2009) (Maloney, C.J.) (citing *Kelley v. Withrow*, 822 F. Supp. 416, 422 (W.D. Mich. 1993) (Gibson, C.J.), *aff'd*, 25 F.3d 363 (6th Cir. 1994)); *see also Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008) (Griffin, J.) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Finally, appellee Flagstar asserts, with no citation to authority, that "the Court's . . . mixed fact and law findings [are] subject to a 'clearly erroneous' standard" of review, *see* Appellees' Br at 7. This is simply wrong under federal and state law. In Michigan's state courts, mixed legal/factual determinations are split into their respective components for the purposes of appellate review: the legal component is subject to *de novo* review and the factual component is subject to clear-error review. *See People v. Waclawski*, – N.W.2d –, 286 Mich. App. 634, ___, 2009 WL 5125466, *13 (Mich. App. Dec. 29, 2009) (citing *People v. Williams*, 475 Mich. 245, 250, 716 N.W.2d 208, 212 (Mich. 2006)). Our federal Court of Appeals sometimes splits the factual and legal components in that same fashion for review, *see US v. Everett*, – F.3d –, –, 2010 WL 1286770, *2 (6th Cir. Apr. 6, 2010) (Boggs, Norris, D.J. Adams) (citing *US v. See*, 574 F.3d 309, 313 (6th Cir. 2009)), and sometimes states simply that mixed determinations of law and fact are subject to *de novo* review. *See US v. McDaniel*, – F. App'x –, –, 2010 WL 1253811, *2 (6th Cir. Apr. 2, 2010) (Merritt, Clay, McKeague) (citing *US v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008)).

## A FEDERAL COURT'S APPLICATION OF STATE LAW

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, *14 (W.D. Mich. 2008) (Paul L. Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)). If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts: "In anticipating how the state supreme court would rule, 'we look to the decisions of the state's intermediate courts unless we are

convinced that the state supreme court would decide the issue differently.'" *ARS*, 602 F. Supp.2d at *14 (citing *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation omitted)); *see also West v. AT&T Co.*, 311 U.S. 223, 236-37 (1940) ("A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances the federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court . . . ."), *followed by Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993) and *Dairy, Bakery & Food Workers Local Union No. 386 v. Grand Rapids Milk Div. of Nat'l Dairy Prods. Corp.*, 160 F. Supp. 34, 39 (W.D. Mich. 1958) (Kent, J.).

### PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts. *See ARS*, 602 F. Supp.2d at – (citing *Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988) ("[O]ne Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . . required a federal court to ascribe the same precedential force to a New Jersey trial court decision that such a decision would receive in that state's court system under the peculiarities of New Jersey law.")). If a state court would not be bound by a particular state-court decision, then neither is this court. *ARS*, 602 F. Supp.2d at – (citing *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 161 (1948) ("a federal court adjudicating a matter of state law in a diversity suit is, in effect, only another court of the State; it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.") (citation omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals has precedential value under the rule of stare decisis." This subsection makes no distinction based on when the decision was issued.. *ARS*, 602 F. Supp.2d at –.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals *issued on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by a Special Panel of the Court of Appeals as provided in this rule." *ARS*, 602 F. Supp.2d at – (emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of Appeals accords precedential value to *all* of its prior published decisions, regardless of when they were issued. *ARS*, 602 F. Supp.2d at –. When a post-November 1, 1990 published Court of Appeals decision conflicts with a *pre*-November 1, 1990 published Court of Appeals decision, however, the *post*-November 1, 1990 decision prevails. *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were *both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed the matter at issue. *ARS*, 602 F. Supp.2d at – (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W. 2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of that same court, regardless of when they were issued. *ARS*, 602 F. Supp.2d at – (citing *Iqbal v. Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R. 7.215(J)(1))). Nonetheless, this court may consider and follow unpublished state-court decisions, so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan

Court of Appeals. *See Republic-Franklin Ins. Co. v. Bosse*, No. 95-3401, 89 F.3d 835, 1996 WL 301722, *5 n.4 (6th Cir. June 4, 1996) (although unpublished decisions are not generally controlling under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in deciding diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a diversity case by an unreported decision of a State court of original jurisdiction, we may give weight to this [unreported] decision of the chancery [court] in determining what is the controlling [state] law.")).

**Finally, a federal court's interpretation of state law is not binding.** *ARS*, 602 F. Supp.2d at – (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2D COURTS § 225 (1965). As our Circuit recently emphasized,

> No federal court has the final say on what [state] law means. Even the decision of the highest federal court, the United States Supreme Court, about the meaning of [a state] law has no more binding authority on the [state] Supreme Court than the decision of [another State's] Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008); *see also Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1042 (6th Cir. 1992) ("the district court's reliance on federal cases interpreting Ohio law is only correct if those cases accurately reflect the law of Ohio") (citation omitted).

Accordingly, this court will seriously consider our Circuit's interpretation of state law, or another district court's interpretation of state law, but is not bound by it. *See ARS*, 602 F. Supp.2d at –; *see also Pack v. Damon Corp.*, 2006 WL 1156489, *1 (E.D. Mich. May 1, 2006) ("Michigan courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law."). *See, e.g.,*

*MPAS v. Michigan DOC*, 581 F. Supp.2d 847, 856 (W.D. Mich. 2008) (Maloney, C.J.) (declining to follow U.S. District Court for the Eastern District of Michigan's determination that MDOC is a political subdivision of the State of Michigan, a matter of state law).

**DISCUSSION**

The Michigan Supreme Court "recognizes that 'a contract may be rescinded because of a mutual misapprehension of the parties, but this remedy is granted only in the sound discretion of the court.'" *Gouma v. Yuma Brands, Inc.*, 283 F. App'x 374, 379 (6th Cir. 2008) (Daughtrey, Clay, McKeague) (quoting *Lewanee Cty. Bd. of Health v. Messerly*, 417 Mich. 17, 26, 331 N.W.2d 203, 208 (Mich. 1982) (Ryan, J., for the Court) (citing *Harris v. Axline*, 323 Mich. 585, 36 N.W.2d 154 (Mich. 1949))). Our record, however, discloses no attempt by mortgagor-debtor Wolters or mortgagee-creditor Flagstar to rescind the re-finance mortgage loan contract or associated undertakings.

Alternately, instead of rescinding a real-estate purchase contract or mortgage loan contract, a Michigan court may reform the deed or other documents to reflect the true joint intention and expectation of the parties as to the boundaries of the property. *See, e.g., Rupe v. Cingros*, 7 Mich. App. 146, 151 N.W.2d 178 (Mich. App. 1967) (P.J. Fitzgerald, Burns, Holbrook) (where evidence supported finding that land had been omitted from conveyance due to mutual mistake, circuit court properly reformed the deed's description of the property to include the inadvertently omitted parcel and granted the purchasers' action to quiet title to the omitted parcel). It does not appear that mortgagee-creditor Flagstar has ever sued for reformation of the property description attached to the mortgage loan documents.

In any event, the cases in which Michigan courts allowed reformation of a deed or mortgage-loan document, such as *Rupe supra*, did *not* involve reformation which affected the value of an existing bankruptcy estate or a bankruptcy trustee's distribution of funds from that estate. In *Rupe*, for example, the Michigan Court of Appeals affirmed the trial court's determination that the plaintiff-sellers were entitled to reform the deed to correct a mutual mistake as to the property's boundaries. But the Court of Appeals also quoted approvingly the trial court's rationale, which emphasized the fact that the purchaser-defendants were "'not in the position of good faith purchasers without notice. They recognized plaintiffs' possession by their suit in ejectment, and possession [by another] is notice.'" *Rupe*, 7 Mich. App. at 151, 151 N.W.2d at 180-81.

Here, by contrast, the U.S. Bankruptcy Trustee *does* take the property in the bankruptcy estate with all the rights of a *bona fide* purchaser without notice, by operation of law. Instructive here is title 11 U.S.C. § 544, which is entitled "Trustee as lien creditor and as successor to certain creditors and purchasers." This section provides, in pertinent part,

>   (a)   *The trustee shall have, as of the commencement of the case, and without regard to any knowledge by the trustee or of any creditor, the rights and powers of, or may avoid* any transfer of property of the debtor or *any obligation incurred by the debtor that is voidable by –*
>   * * *
>   (3)   *a bona fide purchaser of real property, other than fixtures, from the debtor*, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis added). Thus, if it were *the Bankruptcy Trustee* who had sought to avoid reformation of the mortgage's property description, a court could not grant such reformation without rendering section 544(a)(3) nugatory. *See In re Vandenbosch*, 405 B.R. 253, 264 and 265-

66 (Bankr. W.D. Mich. 2009) (James Gregg, Chief Bankr. J.) (reformation of mortgage was no longer available remedy under Michigan law to correct admittedly erroneous property description, as "no reformation of a deed can be made affecting the property after it has gone into the hands of a bona fide purchaser for value without notice"); *accord In re Cunningham*, 48 B.R. 509, 510-512 (Bankr. M.D. Tenn. 1985) (Keith Lundin, Bankr. J.) (same under Tennessee law) (citing *Mountain Empire Bank v. Lancaster (In re Hunt)*, 18 B.R. 504 (Bankr. E.D. Tenn. 1982)); *In re Easter*, 367 B.R. 608 (Bankr. S.D. Ohio 2007) (C. Kathyrn Preston, Bankr. J.) (Ohio-law right to reform mortgage to correct mutual mistake as to legal description of property securing the mortgage loan, could *not* be exercised where it would "abrogate the rights of an innocent third party", which included "bona fide and innocent purchasers", and "[w]ithout constructive knowledge, the Trustee is such an innocent intervening third party, and cannot be subjected to reformation of the mortgage.").

Technically, the mortgagee-creditor here (Flagstar) did not seek reformation of the mortgage's property description. But it did seek payment of the last-remaining funds of the bankruptcy estate, to prevent a putative inequity caused by the mutual mistake in the unreformed mortgage, *which has much the same effect on the distribution of those funds as a reformation would.*

Thus, in the absence of more squarely relevant guidance in the case law, this court would hold that (1) *the bankruptcy trustee*, if he chose, could avoid reformation of the mortgage's property description and (2) the bankruptcy judge therefore could not properly require the trustee, *over his proclaimed exercise of his avoidance right*, to pay estate funds to the mortgagee (Flagstar) as if the mortgage documents had been thus reformed. *See In Re Kildow*, 232 B.R. 686 (Bankr. S.D. Ohio 1999) (Christopher Caldwell, Bankr. J.) (Ohio law entitled mortgagees to reform mortgages to

-15-

correct the legal description of the property subject to their liens, and *debtor* was not entitled to avoid the corrected liens *as the bankruptcy trustee would have been entitled to do*).

But it is not the bankruptcy trustee who objected to creditor Flagstar's equitable claim (a claim asserted effectively in lieu of reformation of the mortgage's mistaken property description) to funds left in the bankruptcy estate. Rather, it was only debtor Wolters who objected to Flagstar's in-lieu-of-reformation equitable claim. Wolters presents no precedent for the proposition that the bankruptcy court lacked authority to grant Flagstar's <u>equitable</u> claim to the left-over funds in order to prevent him from reaping a windfall due to an admitted mutual mistake in the property description. The court finds no such authority. On the contrary, as Flagstar points out, the Bankruptcy Code broadly defines what constitutes a cognizable, actionable "claim" under the Code. Title 11 U.S.C. § 101(5) provides that

> [t]he term "claim" means – (a) a right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) *right to an equitable remedy for breach of performance* if such breach gives rise to a right to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Emphasis added. The court determines that Flagstar's asserted right to an equitable remedy (to prevent Wolters' profiting from the mutual mistake) may reasonably be classified as "an equitable remedy for breach of performance", rendering it a "claim" as defined by section 101(5). Under Michigan law, Flagstar had a well-established right to reform the mortgage to correct the mutual mistake of fact in the property description – unless the bankruptcy trustee himself endeavored to avoid such reformation, which he did not – and it is undisputed that debtor Wolters did not tender payments as required by the mortgage documents, whether reformed or unreformed. That was a breach of Wolters' duty to perform under the mortgage loan contract and associated undertakings.

-16-

There is no dispute that as mortgagee – again, in the absence of avoidance *by the trustee* – Flagstar had a right to foreclose upon *both* parcels, as Wolters admittedly contemplated when he executed the mortgage documents, or to seek funds flowing from the sale of both parcels, and/or to seek to collect on any deficiency remaining after foreclosure/sale.

Debtor Wolters provides no basis for concluding that the bankruptcy judge abused his statutory discretion in granting Flagstar's claim based on colorable equitable reasoning, and the court perceives no basis for disturbing the bankruptcy judge's defensible exercise of that discretion either.

## ORDER

Debtor Wolters's appeal is **OVERRULED**.

The court **AFFIRMS** the United States Bankruptcy Court's December 3, 2009 overruling of debtor-appellant Mark E. Wolters's objection to creditor-appellee Flagstar Bank FSB's equitable claim to the funds remaining in the bankruptcy estate after payment of the trustee and all creditors.

This is a final and immediately-appealable order.[2]

**IT IS SO ORDERED** on this 1st day of June, 2010.

    /s/ Paul L. Maloney
    Honorable Paul L. Maloney
    Chief United States District Judge

---

[2] If a party appeals this decision to the Sixth Circuit Court of Appeals, that court will review the bankruptcy court's decision directly, rather than review this court's review of that decision. *See In re Fisher*, 296 F. App'x 494, 499 (6th Cir. 2008) (Guy, Ryan, McKeague) (citing, *inter alia*, *Stevenson v. J.C. Bradford & Co.*, 277 F.3d 838, 849 (6th Cir. 2002)).